Thiago M. Coelho (SBN 324715)
*thiago.coelho@wilshirelawfirm.com*
Chumahan B. Bowen (SBN 268136)
*chumahan.bowen@wilshirelawfirm.com*
Jesenia A. Martinez (SBN 316969)
*jesenia.martinez@wilshirelawfirm.com*
**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa St., Sky Lobby,
Los Angeles, California 90017
Telephone: (213) 381-9988
Facsimile: (213) 381-9989
*Attorneys for Plaintiff*
*and the Proposed Class and Subclass*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISTIANA MENDOZA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SCHYLLING, INC., a Delaware corporation,<br><br>Defendant. | Case No.:<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

---

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff CRISTIANA MENDOZA ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action based on personal knowledge as to herself and her own acts, and as to all other matters upon information and belief, based upon, inter alia, the investigation of her attorneys.

## NATURE OF THE ACTION

1. This case concerns Schylling, Inc.'s popular NeeDoh line of squeezable sensory toys. Schylling markets the NeeDoh products for repeated squeezing by children and adults, including at school, at home, in the office, and in the car, and promotes them as sensory toys that can help with relaxation, fidgeting, focus, or stress relief.[1,2]

2. The products share a basic construction: a flexible exterior outer shell encloses a sticky, gel-like, or maltose filling.[3] Schylling sells the same concept in many shapes and sizes, including the Nice Cube, Dream Drop, Original Groovy Glob, Super NeeDoh, Teenie NeeDoh, Gumdrop, Groovy Fruit, Color Changing NeeDoh, Shaggy NeeDoh, Dohnut and Jelly Dohnut, Squeezza, Nice-sicle, Press-Doh, Color Change Cube, and other NeeDoh variants (collectively, the "NeeDoh Products").[4]

3. Although individual models may use different formulations, their shared safety problem is the same: when the enclosed filling becomes heated, its temperature, volume, pressure, or viscosity may change while it remains sealed inside the flexible outer shell. Subsequent handling or squeezing may then cause the product to rupture or explode, ejecting dangerously hot and sticky filling. The

[1] Schylling Inc., About Us, https://schylling.com/about-us/ (last accessed July 15, 2026).
[2] Schylling Inc., Helping Students Get a GRIP! https://schylling.com/press-release/helping-students-get-a-grip/ (last accessed July 15, 2026).
[3] Schylling FAQ, Are the contents inside my NeeDoh product safe? https://schylling.com/faqs/ (last accessed July 15, 2026).
[4] See e.g., Schylling Inc., Classic NeeDoh—The Original Groovy Glob Sensory Squish, https://schylling.com/product/nee-doh-the-groovy-glob-stress-ball/; Schylling Inc., Super NeeDoh, https://schylling.com/product/super-nee-doh/; Schylling Inc., NeeDoh Nice Cube, https://schylling.com/product/needoh-nice-cube/ (each last accessed July 15, 2026).

1

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

filling's ability to adhere to skin can prolong heat exposure, make prompt removal difficult, and cause severe thermal burns.

4.    The dangers posed by NeeDoh Products are real, recurring, and severe. As detailed below, numerous reported incidents involving heated NeeDoh Products have resulted in children suffering second- and third-degree burns, hospitalization, permanent scarring, and other serious injuries. At least one seven-year-old child was placed in a medically induced coma due to the severity of the burns.

5.    Despite this known danger, Schylling does not warn consumers that heat exposure may cause a NeeDoh Product to rupture or explode and eject hot filling capable of causing severe burns.  Schylling warns that the "contents may become hot" when leaving the product in a car or direct sunlight.  A separate warning addressing heating, freezing, or microwaving states only that the conduct may cause "personal injury". Neither warning communicates the mechanism or severity of the danger: that when heated, a NeeDoh Product may rupture, burst, or explode and forcefully eject hot, adhesive filling capable of causing severe burns, hospitalization, permanent scarring, or disfigurement. Both warnings are placed on the back of the packaging, where they are unlikely to been seen by the consumer.

6.    The heat danger is also not apparent from the NeeDoh Product itself- as it may not feel hot to touch. Upon information and belief, the rubber outer shell does not readily conduct or dissipate heat from the enclosed viscous filling. Thus, the exterior may feel substantially cooler and provide no warning of the danger, even while the inside filling is hot enough to cause the product to explode and cause severe burns.

7.    A reasonable purchaser of a child-oriented sensory toy does not expect that leaving it indoors near a window, in a car, in a classroom, or in another foreseeable location may convert the toy into a pressurized container capable of rupturing and expelling dangerously hot, adhesive filling.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

8. Schylling knew of the hazards before Plaintiff's purchase. Public Consumer Product Safety Commission ("CPSC") reports sent to Schylling described NeeDoh Products that burst or exploded during intended play and allegedly caused burns. Other reports and news accounts described NeeDoh Products becoming dangerously hot in cars without ever being placed in a microwave or intentionally heated.

9. By November 2024, if not earlier, children were following a viral social-media practice of microwaving NeeDoh Products to make them softer or squishier. That month, an eleven-year-old reportedly followed a TikTok recommendation to microwave a NeeDoh for that purpose; the product burst while he held it, causing third-degree burns, months of treatment, infection, lasting scars, and continuing limitations. His family reported that the unit carried no warning.[5]

10. Schylling knew or should have known of the social media trends and the dangers the products posed when exposed to heat. In a 2023 marketing release, it celebrated NeeDoh's "unflinching grip" on social media, touted more than 150 million—and elsewhere in the same release more than 200 million—TikTok view sand directed consumers to follow @NeeDohOfficial. Social media was therefore a cultivated marketing channel that Schylling had reason and the ability to monitor for foreseeable product use and misuse.[6]

11. Despite the social media trend, Schylling's warning response was delayed, incomplete, and ineffective. On January 14, 2025, after Inside Edition reported yet another child suffering facial burns when a microwaved NeeDoh burst, Schylling responded that it added a warning, but the warning was *only* on its

**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

---

[5] Lauren Harksen, Jefferson County Teen Burned by Microwaved NeeDoh Toy Warns Others About TikTok Trend, WBRC (July 7, 2026, updated July 12, 2026), https://www.wbrc.com/2026/07/08/jefferson-county-teen-burned-by-microwaved-needoh-toy-warns-others-about-tiktok-trend/ (last accessed July 15, 2026).
[6] Schylling, Helping Students Get a Grip, supra note 2.

3

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

website. In March 2025, Schylling finally stated that it had added warnings to its packaging too.[7,8]

12.    When Schylling did warn, it still did not explain the actual danger. An earlier warning attributed to NeeDoh packaging stated: "CAUTION: Do not leave in car or direct sun. Contents may become hot." The later warning, now also states: "Do NOT heat, freeze, or microwave, may cause personal injury."[9]

13.    Neither warning discloses the actual nature and seriousness of the danger—that heat can cause the NeeDoh Product to rupture or explode, eject sticky filling, and severely burn the user. The earlier warning names a car and direct sun but describes only the commonplace condition that contents may become hot—not the resulting rupture, explosion, adhesion, or burn hazard. The later warning omits cars, sunlight, windows, and ambient heat altogether and identifies only unspecified "personal injury." Neither enables a parent, teacher, caregiver, or child to understand the actual risk.

14.    The microwave incidents demonstrate why a generic warning is inadequate. Saying only that heating "may cause personal injury" does not warn that the sealed toy may explode within seconds and eject filling hotter than 200°F

---

[7] Inside Edition, *Girl Burned After NeeDoh Toy Explodes in Microwave* (Jan. 14, 2025), https://www.insideedition.com/media/videos/8-year-old-girl-suffers-burns-on-face-after-needoh-toy-explodes-in-microwave-90066 (last accessed July 15, 2026).

[8] Andryanna Sheppard, *Nonprofit Demands Investigation into Sensory Toy After Reports of Blisters, Burn Marks*, FOX5 Vegas (Mar. 20, 2025), https://www.fox5vegas.com/2025/03/21/nonprofit-demands-investigation-into-sensory-toy-after-reports-blisters-burn-marks/ (last accessed July 15, 2026).

[9] Schylling's current product pages repeat substantially the same warning across their differently shaped and filled NeeDoh products: See, e.g. https://schylling.com/product/needoh-nice-cube/; https://schylling.com/product/nee-doh-the groovy-glob-stress-ball/; https://schylling.com/product/color-changing-nee-doh/; https://schylling.com/product/jelly-dohnut-needoh/; https://schylling.com/product/teenie-nee-doh/ (last accessed July 15, 2026).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

that can stick to skin and cause immediate or deep thermal injury.[10,11,12]

15. Heat exposure, without a microwave, is also a known danger. California routinely experiences extreme-heat conditions, and sunlight passing through windows can rapidly heat enclosed spaces. Official heat guidance warns that parked-vehicle temperatures can rise approximately 20°F in ten minutes and 50°F in an hour, even when outdoor temperatures are only in the 70s. Against that background, storage in cars, classrooms, homes, or near windows is not remote misuse; it is a foreseeable condition of sale and use in California.[13]

16. In July 2026, a Fresno burn center and local news media were warning California families about sticky thermal burns from these filled squishy toys, including injuries after microwave heating and hot-car storage. Those after-the-fact warnings do not substitute for a manufacturer's clear warning before purchase and injury. Parents, teachers, and children should not have to learn the product's explosive failure mechanism from emergency physicians or a news report after someone is burned.[14]

17. Moreover, Schylling markets NeeDoh Products as portable products intended for use outside the home. Schylling promotes NeeDoh Products for use in the ***car***, ***anywhere at any time***, including ***on-the-go***.  Through its official *@needohofficial* TikTok account, Schylling affirmatively published videos

---

[10] See https://schylling.com/press-release/helping-students-get-a-grip/ (last accessed July 15, 2026).

[11] Mayra Franco, Popular Squishy Toy Sends Teen to Hospital with Burns, What Parents Should Know, KMPH FOX26 (July 7, 2026, updated July 8, 2026), https://kmph.com/news/local/popular-squishy-toy-sends-teen-to-hospital-with-burns-what-parents-should-know (last accessed July 15, 2026).

[12] Lauren Kirchner, *Squishy Toys Can Be a Sticky Mess,* (Dec. 16, 2025), Consumer Reports, (Some sampled toys exploded after roughly 15 seconds in a microwave and exceeded 200°F. CR also recounted a June 2025 report in which a parent picked up a NeeDoh Dream Drop from a car seat and boiling-hot, glue-like gel allegedly poured onto her hand, causing second-degree burns.)

[13] See California Department of Public Health, Extreme Heat Safety (Feb. 25, 2026), https://www.cdph.ca.gov/Programs/OPA/Pages/Communications-Toolkits/Heat-Summer-Safety.aspx; National Weather Service, Look Before You Lock!, https://www.weather.gov/lmk/beat_the_heat_and_check_the_back_seat (each last accessed July 15, 2026).

[14] See Franco, KMPH FOX26, supra note 12.

**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

depicting NeeDoh products being used inside a vehicle and being arranged on a windowsill in direct sunlight. Schylling goes further with the NeeDoh Mello Mallo—a filled sensory toy recommended for children ages three and older—which it expressly markets for intentional sun exposure. Schylling's website instructs consumers to "set it in the sun and watch as the colors toast and transform," while its official Instagram post states, "Sunshine just upgraded your squeeze game" and "The NeeDoh Mello Mallo changes color in the sun," as shown in the screenshot below. Schylling thus promotes NeeDoh Products for use and storage in the same heat-prone environments implicated by its warnings.[15] [16]



18.     Schylling's own marketing therefore depicts and encourages use in the same outdoor and automobile environments in which exposure to sunlight and elevated temperatures is reasonably foreseeable. Yet Schylling does not disclose in

---

[15] See e.g. https://www.tiktok.com/@needohofficial/video/7633446651864091934 and https://www.tiktok.com/@needohofficial/video/7637140866527677726 (last accessed July 16, 2026).
[16] Schylling Inc., *NeeDoh Mello Mallo*, https://schylling.com/product/needoh-mello-mallo/; NeeDoh Official, "Sunshine just upgraded your squeeze game," Instagram, https://www.instagram.com/reel/DLIDm_ETm-r/ (last accessed July 20, 2026).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

those posts that the product's sealed construction may trap heat within the filler, that the exterior may not reliably reveal the internal temperature, or that a heated product may rupture when subsequently handled or squeezed. Nor do the posts warn that the expelled scalding filler may come out of the ruptured Product, adhere to the skin, and cause severe burns.

19.    This omission is not cured by Schylling's label stating only: "Do NOT leave in a hot car or direct sun: contents may become hot." The phrase "may become hot" does not disclose that the contents may become scalding, that heat may produce internal pressure and rupture or explode, or that it may cause serious burn injuries. Schylling thus simultaneously depicts children using NeeDoh outdoors and in automobiles while withholding from those same consumers the actual nature and severity of the heat-related hazard associated with those foreseeable settings.

20.    Plaintiff is a San Jose behavioral technician who works with autistic children and is familiar with sensory and fidget products. On or about April 30 2026, she purchased a NeeDoh Nice Cube from the Walmart located at 4055 Evergreen Village Sq. Ste 140, San Jose, California 95135. She reasonably expected a product sold for squeezing and sensory use to remain safely contained during foreseeable storage and use.

21.    On approximately May 15, 2026 Plaintiff's Nice Cube was inside on her TV stand near a window. It had not been microwaved, frozen, placed in an oven, or otherwise intentionally heated. The NeeDoh did not feel hot to touch, but exploded when she squeezed it and expelled extremely hot inside filler onto Plaintiff's leg, burning her and causing blistering, painful red skin, and irritation. Due to its sticky and adhesive composition, the product trapped residual heat directly against the skin, compounding the severity of the injury.

22.    Had Schylling adequately disclosed that foreseeable indoor sun or heat could cause the product to rupture or explode and release sticky, dangerously hot and irritating material, Plaintiff would not have purchased the product, would have

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

paid less for it, and would have kept it away from any location where ordinary heat or sunlight could accumulate.

23. Schylling's actions and omissions related to the NeeDoh Products are not its first instance of placing profits above children's safety. Schylling previously paid a $400,000 civil penalty to resolve CPSC allegations that it knowingly distributed children's toys containing unlawful levels of lead, continued shipping similar toys for months without testing its inventory, and failed to notify CPSC for five years—acting only after a newspaper investigation exposed the hazard. A CPSC Commissioner described the conduct as creating an "actual risk of harm to children."[17]

24. Plaintiff seeks compensation for her individual physical injuries and related losses. On behalf of the proposed California Class, she seeks economic relief for purchases made without disclosure of the latent safety defect and injunctive relief requiring truthful, specific warnings and other appropriate corrective measures. On behalf of a California Injury Subclass, she also seeks adjudication of common strict-liability issues and recovery for persons physically injured by the same rupture hazard.

**THE PARTIES**

25. Plaintiff Cristiana Mendoza is a citizen of California who resides in San Jose, Santa Clara County. She purchased a NeeDoh Nice Cube in California for personal, family, or household purposes and suffered physical and economic injury in this District.

26. Plaintiff is a behavioral technician that works with autistic children. Schylling specifically promotes NeeDoh Products as sensory and fidget products,

_____

[17] See *Schylling Associates, Inc.; Provisional Acceptance of a Settlement Agreement and Order*, 75 Fed. Reg. 30,784, 30,785–87 (June 2, 2010), https://www.federalregister.gov/documents/2010/06/02/2010-13088/schylling-associates-inc-provisional-acceptance-of-a-settlement-agreement-and-order; *see also* Statement of Comm'r Anne M. Northup on the Proposed $400,000 Civil Penalty Settlement for Schylling Associates, Inc. 1 (May 25, 2010), https://www.cpsc.gov/s3fs-public/pdfs/foia_schylling05252010.pdf.

8

**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

as appropriate for schools and those with special needs, and as products that may help with anxiety, focus, attention, and centering. Those promoted uses were material to Plaintiff's decision to buy a NeeDoh Product.[18,19]

27. Defendant Schylling, Inc. ("Schylling" or "Defendant") is a Delaware corporation headquartered in North Andover, Massachusetts. Schylling designs, manufactures, tests, labels, advertises, distributes, warrants, and sells the NeeDoh Products throughout California and the United States.[20]

## JURISDICTION AND VENUE

28. This Court has subject-matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class contains at least 100 members, at least one Class member is a citizen of a state different from Defendant, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

29. Minimal diversity exists because Plaintiff and members of the proposed California Classes are citizens of California, while Defendant Schylling, Inc. is a citizen of Delaware, where it is incorporated, and Massachusetts, where it maintains its principal place of business.

30. The amount in controversy is satisfied because Schylling has stated that more than 100 million NeeDoh units have been sold, the products are broadly sold through national and California retailers, and the Class seeks restitution, actual damages, statutory remedies, punitive damages where available, attorneys' fees, and injunctive relief. On information and belief, California sales and the value of the requested relief exceed $5,000,000 in the aggregate.

31. This Court has personal jurisdiction over Schylling because Schylling purposefully directs, distributes, markets, and sells NeeDoh Products to California

[18] See https://schylling.com/press-release/helping-students-get-a-grip/ (last accessed July 15, 2026).
[19] See Schylling product pages, supra note 4.
[20] See Schylling, About Us, supra note 1.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

consumers through established retail and e-commerce channels; derives substantial revenue from those sales; and the claims arise from a NeeDoh Product sold to and used by Plaintiff in California.

32.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred here: Plaintiff resides in San Jose, purchased the Nice Cube at a Walmart in Santa Clara County, encountered Defendant's omissions and warnings here, used the product here, and was injured here. Assignment to the San Jose Division is proper under Civil Local Rule 3-2(e).

## FACTUAL ALLEGATIONS

### A. Schylling's NeeDoh Product Line and Marketing

33.     Schylling describes NeeDoh as a leading sensory and fidget brand built around soft, stretchy dough or gel-filled products intended to be squeezed, pulled, or smushed repeatedly. The products are marketed for ages 3 and older.

34.     Schylling does not market NeeDoh Products as requiring special temperature-controlled storage. It markets them as portable toys for ordinary life—at home, in classrooms, offices, cars, party settings, and "*anywhere at any time*." Schylling's marketing encourages consumers to keep the products nearby and use them throughout the day.[21]

35.     Schylling also promotes NeeDoh Products as particularly suitable for schools, people with special needs, and consumers with anxious tendencies or a need for focus and centering. This marketing predictably places the products in children's hands and in classrooms, desks, windowside areas, and in vehicles.

36.     The intended and reasonably foreseeable users include children, including children who may have autism, ADHD, anxiety, or other sensory needs.

---

[21] See Schylling, Helping Students Get a GRIP! available at: https://schylling.com/press-release/helping-students-get-a-grip/ (last accessed July 15, 2026).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

Such consumers may squeeze, carry, drop, leave, retrieve, or store the toys in the same ordinary locations in which children use and keep other toys.

37.    Schylling capitalized on the products' social-media popularity. Its own press materials stated that the NeeDoh line had generated more than 200 million TikTok views, encouraged consumers to showcase playing with their NeeDohs, and promoted its official social account. Schylling thus used TikTok and related platforms to create demand and had reason to monitor how the same child-oriented product was being displayed and manipulated. Social-media-driven demand increased both sales and the foreseeability that children would experiment with the products' texture to share and gain views.[22]

38.    NeeDoh Products vary in size, shape, color, and particular filling, but each relevant product is sold as the same essential experience: a sealed, flexible, filled object designed to be compressed and to return to its original form. The products are substantially similar with respect to the alleged defect, the omitted heat-and-rupture hazard, the intended use, the target consumer, and the warnings at issue.

39.    Schylling's own current labeling practice confirms that it treats heat exposure as a common NeeDoh-line hazard. Across many differently shaped and filled NeeDoh product pages, Schylling repeats the same or substantially similar instruction not to heat, freeze, or microwave because personal injury may result.[23]

40.    The Class allegations do not depend on every formula being chemically identical. They depend on the common, undisclosed fact that the NeeDoh Products are sealed, filled squeeze toys that can rupture and expose consumers to hot, adhesive, or irritating filling under foreseeable conditions, and on Schylling's common failure to communicate the specific nature and consequences of that hazard.

---

[22] *Id.*
[23] See Schylling product warnings, supra note 9.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

### B. The Common Rupture, Heat, and Skin-Exposure Hazards

41.    NeeDoh Products are designed to be squeezed and contain a thick, sticky filling inside a flexible outer material, or "shell." This sealed flexible object filled with viscous material experiences internal pressure when squeezed and its contents expand or change viscosity with temperature. The outer shell can break open during use or after becoming too hot. When that happens, the filling may burst onto a user's skin.

42.    Schylling states that most NeeDoh products consist of a thermoplastic-rubber ("TPR") outer shell filled with polyvinyl alcohol ("PVA") or maltose. Upon information and belief, the combination of a polymer shell and a highly viscous filler impedes the toy's ability to dissipate heat quickly and uniformly. Polymers generally have low thermal conductivity, and high viscosity suppresses the internal circulation that otherwise transfers heat through a liquid. Consequently, after exposure to a microwave, direct sunlight, or a hot vehicle, portions of the enclosed filling may remain dangerously hot even when the outside shell feels cool. The exterior may therefore fail to provide an adequate or timely indication of the temperature of the material inside.[24] In fact, published reports describe this exact scenario, when a child touches the NeeDoh Product, it does not feel hot before it

---

[24] See Zewei Cai et al., *Progress of Polymer-Based Thermally Conductive Materials by Fused Filament Fabrication: A Comprehensive Review*, 14 Polymers 4297 (2022), https://doi.org/10.3390/polym14204297 (explaining that polymers typically possess low thermal conductivity); Thilakavathi Ramamurthy & Suresh Krishnan, *Influence of Viscosity on the Thermal Behavior of Fluids in a Sealed Can*, 61 Alexandria Engineering Journal 7833, 7833–42 (2022), https://doi.org/10.1016/j.aej.2022.01.038)

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

explodes the boiling liquid causing severe burns.[25] [26]    This was Plaintiff's experience as well.

43.    Governmental authorities have likewise recognized that the internal heat danger presented by gel-filled squishy toys may be concealed from the user. In June 2026, Gloucestershire Trading Standards warned that, although "the outside may feel cool," the enclosed gel "can become extremely hot and may burst, causing burns or other injuries." [27]

44.    Heating also increases the danger that a squishy gel toy will rupture and release its contents.  Consumer complaints, CPSC reports, and independent testing describe NeeDoh and similar filled squeeze toys that broke, burst, popped, or exploded during ordinary use or after heat exposure. Consumer Reports further found that extreme temperature changes can make squeeze toys break open more easily and that some sampled toys exploded after approximately fifteen seconds of microwave heating and exceeded 200°F.[28]

45.    These risks are not apparent to an ordinary consumer, particularly a child. A warning merely stating that the "contents may become hot" does not disclose that the exterior may not reliably indicate the temperature of the filling; that dangerous heat may remain concealed inside the toy; that squeezing the toy may cause it to rupture and suddenly discharge the heated filling; cause severe

[25] Abigail Mableson, *Warning over 'explosive' squishy toy trend landing children in hospital with severe burns and needing skin grafts*, The Sun, (June 29, 2026) https://www.thesun.co.uk/news/39579763/explosive-squishy-toy-burns-children-hospital/ (reporting that while the outside may feel cool, the gel inside can become extremely hot and may burst, causing burns or other injuries).

[26] Ben Cost *Authorities warn parents about dangerous TikTok challenge with popular children's toy that causes 'traumatizing' burns,* New York Post, (May 4, 2026) https://nypost.com/2026/05/04/lifestyle/popular-needoh-toy-tiktok-challenge-leaves-child-with-traumatizing-burns/ (Describing that because of the rubber outer layer, they couldn't feel how hot it was inside, so her friend squeezed it, which is when it burst onto both of them).

[27] See https://www.gloucestershire.gov.uk/gcc-news/news-june-2026/nearly-2-000-unsafe-squishy-toys-seized-by-trading-standards/

[28] See Kirchner, Consumer Reports, supra note 12.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

burns, or that the hot, viscous material may adhere to the skin, prolong exposure, and aggravate the resulting burn.

46.    When a NeeDoh Product's outer shell opens under pressure, the contents may be expelled rather than merely leak slowly. Consumers and public reports accordingly describe products that "burst," "busted," "popped," or "exploded."[29]

47.    The risk is not limited to deliberate microwaving. Cars, sunlit rooms, windows, backpacks, outdoor play areas, and other common locations can expose toys to elevated temperatures. A toy marketed for use in the car and "anywhere at any time" foreseeably will sometimes be left where ambient heat accumulates.

48.    That exposure is particularly foreseeable in California. State public-health authorities maintain extreme-heat guidance, and the National Weather Service explains that solar energy entering through glass causes parked vehicles to heat rapidly and that cracking the windows provides little protection. A filled toy marketed for cars, schools, homes, and use anywhere should be designed and warned for those predictable heat conditions.[30]

49.    The filling can make the injury worse. Unlike burning water, which may run off skin, reports describe heated NeeDoh Product filling as glue-like or taffy-like. Adhesion can hold hot material against skin, complicate removal, and compound the severity of the burns.[31]

50.    The filling can also cause skin irritation apart from, or in combination with, heat. Consumer Reports identified maltose or malt extract in the Nice Cube and PVA in the Groovy Glob. Its experts stated that either material could irritate

---

[29] *Id.*

[30] See CDPH and National Weather Service heat guidance, supra note 13.

[31] Josh Taylor, West Virginia Teen Burned After Popular Toy Left in Hot Car Explodes, Mom Says, CBS News Pittsburgh (updated June 29, 2026), https://www.cbsnews.com/pittsburgh/news/girl-burned-after-popular-toy-left-in-hot-car-explodes-mom-says/ (last accessed July 15, 2026).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

some skin and that elevated temperatures could worsen irritation.[32] A dermatologist similarly explained that children's thinner skin makes any reactions more pronounced.[33]

51.    Schylling maintained that the identified ingredients would not burn skin at room temperature. Even Schylling's position, however, points to heat as an explanation for reported injuries and does not eliminate the separate danger of thermal burns from heated sticky filling.

52.    Consumer Reports separately heated sample squishy toys and found that some exploded after about 15 seconds in a microwave and reached temperatures above 200°F—hot enough, according to CR's safety experts, to cause immediate tissue damage. This brief testing illustrates the speed and severity with which a toy designed for small children can become a burn hazard when exposed to heat.[34]

53.    The microwave incidents are relevant because they demonstrate a known issue—rapid internal heating followed by rupture and release of scalding, adhesive material—and because Schylling's response shows its knowledge and ability to add warnings across the entire product line.

54.    They are also relevant to foreseeability. Schylling marketed NeeDoh to children and publicized the brand's social-media popularity. By November 2024, the microwave practice had caused a documented third-degree burn injury, and by early January 2025 Schylling had added a website warning. A Fresno burn-center physician later confirmed that the viral practice was producing burns. Once Schylling knew or should have known that children were engaging in that conduct,

---

[32] Kirchner, Consumer Reports, supra note 12.

[33] Id.

[34] See Kirchner, Consumer Reports, supra note 12.

15

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

a generic warning of unspecified "personal injury" did not fully communicate the known risks of explosion, scalding temperature, adhesion, and severe burns.[35,36,37]

55.    Upon information and belief, a safer design was technologically and economically feasible, including a more heat-stable and less irritating filling, a filling that does not adhere to skin, a stronger or differently constructed exterior and seam, a design that tolerates foreseeable temperature and pressure changes without rupture. Separately, clearer temperature, storage, rupture, burn, and first-aid warnings were feasible.

### C. Prior Reports, Complaints, and Schylling's Notice

56.    Consumer complaints related to the danger NeeDoh Products presented were widespread before Plaintiff's purchase.

57.    On October 29, 2024, a consumer reported to the CPSC that an eight-year-old was playing with a NeeDoh Nice Cube when it burst and the liquid contacted his leg, allegedly causing chemical burns to his calf and ankle. The CPSC database states that the report was sent to Schylling on November 4, 2024.[38]

58.    That report identified the manufacturer, brand, model, registration or serial information, UPC, retailer, purchase date, injury, and photographs. It therefore gave Schylling specific notice of a Nice Cube rupture during ordinary child play and alleged burns and injuries from the contents.

59.    In November 2024, the social-media trend also materialized in a catastrophic injury. An eleven-year-old reportedly saw a TikTok trend recommending that users microwave a NeeDoh to make it squishier. When he held and squeezed the warmed product, it burst over his neck, chest, and hands, causing

---

[35] See Harksen, WBRC, supra note 5.
[36] See Inside Edition, Girl Burned After NeeDoh Toy Explodes, supra note 7.
[37] See Franco, KMPH FOX26, supra note 11.
[38] U.S. Consumer Product Safety Commission, SaferProducts.gov Incident Report No. 20241029-BE8B0-2147335660 (published Nov. 19, 2024), https://www.saferproducts.gov/PublicSearch/Detail?ReportId=4970013 (last accessed July 15, 2026).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

third-degree burns, approximately four months of treatment, infection, lasting scars, and continuing limitations. The family reported that the product carried no warning at the time.[39]

60.    That incident establishes that the NeeDoh microwave practice existed by November 2024 at the latest. It also occurred after Schylling had publicly celebrated NeeDoh's enormous TikTok audience and its deliberate social-media marketing.[40]

61.    On January 14, 2025, Inside Edition reported that an eight-year-old suffered facial burns when a microwaved NeeDoh burst. The report further stated that Schylling had added the "Do not heat, freeze, or microwave, may cause personal injury" warning, but only to its website – not the packaging – the previous week.[41]

62.    On January 12, 2025, another consumer reported that an undamaged NeeDoh Nice Cube exploded while a ten-year-old used it as intended. The report described a chemical burn on the child's forearm and emergency-department treatment. The CPSC database states that the report was sent to Schylling on January 15, 2025.[42]

63.    The January 2025 report was especially significant because it expressly stated that the toy was being used as intended, had not been damaged before the incident, and "exploded." The allegations thus could not reasonably be dismissed as involving only microwave misuse.

64.    In March 2025, Consumer Reports publicly asked the CPSC to investigate the Nice Cube and similar sensory squeeze toys after identifying

---

[39] See Harksen, WBRC, supra note 5.
[40] See Schylling, Helping Students Get a GRIP!, supra note 2.
[41] See Inside Edition, Girl Burned After NeeDoh Toy Explodes, supra note 7.
[42] U.S. Consumer Product Safety Commission, SaferProducts.gov Incident Report No. 20250112-1FB5A-2147333937 (published Jan. 30, 2025), https://www.saferproducts.gov/PublicSearch/Detail?ReportId=5108893 (last accessed July 15, 2026).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

reported blisters and burns. The request drew public attention to both intended-use ruptures and severe microwave-heating incidents.

65.    Schylling responded publicly that misusing a NeeDoh Product by heating, microwaving, or freezing was dangerous and may cause injury. Schylling further stated that it had added a warning to NeeDoh packaging and its website.[43]

66.    That response demonstrates, at minimum, Schylling's actual knowledge by March 2025 that temperature changes could cause personal injury, that the existing warning program required revision, and that the issue applied broadly enough to warrant changes to NeeDoh packaging and the brand website.

67.    A June 2025 incident described by Consumer Reports involved no microwave. A parent reported that a NeeDoh Dream Drop left on a car seat became so hot that boiling, glue-like filling poured onto her hand when she picked it up, allegedly causing second-degree burns.[44]

68.    In August 2025, a CPSC report described a Groovy Fruit NeeDoh that burst while a ten-year-old squeezed and twisted it in a car. The parent reported burning followed by painful skin injuries across the child's hands. The CPSC database states that the report was sent to Schylling on August 8, 2025.[45]

69.    These reports spanned at least three distinct NeeDoh forms—the Nice Cube, Dream Drop, and Groovy Fruit—and included intended play, ordinary handling after car storage, heat, rupture, sticky filling, and skin injury. They placed Schylling on notice that the concern was broader than one product, one batch, one filling, or one social-media challenge.

70.    On June 10, 2026, KRQE reported that a thirteen-year-old suffered third-degree burns from a NeeDoh that had been left in a hot car for hours. When

---

[43] See Sheppard, FOX5 Vegas, supra note 8.
[44] See Kirchner, Consumer Reports, supra note 12.
[45] U.S. Consumer Product Safety Commission, SaferProducts.gov Incident Report No. 20250805-17290-2147328916     (published     Aug.     22,     2025), https://www.saferproducts.gov/PublicSearch/Detail?ReportId=5464670   (last accessed July 15, 2026).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

she later squeezed it, the toy allegedly exploded and released scalding, sticky filling onto her arms and legs. The incident involved no microwave and demonstrated that foreseeable environmental heat alone could create the same explosive, adhesive burn mechanism.[46]

71. The New Mexico incident was consistent with the earlier Dream Drop hot-car burn, the Groovy Fruit car rupture, and Schylling's own instruction not to leave NeeDoh Products in cars or direct sun. It further demonstrated that describing contents merely as becoming "hot" did not adequately communicate the risk of explosion, third-degree burns, and sticky filling that can remain attached to skin. This and subsequent reports corroborate the same non-microwave, heat-related failure mode and the continuing need for corrective relief, not as evidence of Schylling's knowledge before Plaintiff's purchase.

72. By July 2026, Schylling again acknowledged the continuing trend of serious burn incidents. Contemporaneous hot-car reporting underscored that ordinary consumers did not appreciate the hazard. After a hot squishy toy ruptured onto a thirteen-year-old's leg, the parent explained: "It's a toy. You don't think how this could be dangerous." The report also stated that dozens of CPSC reports described ruptures, irritation, and burns, with several involving toys left in hot cars.[47]

73. Another report stated that the hot, thick filling on the child's lap had to be removed with saline in an emergency department and that Poison Control described approximately half a dozen local calls involving squishy toys. Consumers thanked the family for ***publicizing a risk they had not previously considered***.[48]

---

[46] Marilyn Upchurch, New Mexico Teen Gets 3rd Degree Burns from Viral NeeDoh Toy After Leaving It in Hot Car, KRQE News 13 (June 10, 2026, updated June 11, 2026), https://www.krqe.com/news/new-mexico/new-mexico-teen-gets-3rd-degree-burns-from-viral-needoh-toy-after-leaving-it-in-hot-car/ (last accessed July 15, 2026).
[47] Brenda Ordonez, Squishy Toy Left in Hot Car Burns Teen, Family Warns Parents, FOX19 (June 30, 2026), https://www.fox19.com/2026/06/30/squishy-toy-left-hot-car-burns-west-virginia-teen-family-warns-parents (last accessed July 15, 2026).
[48] See Taylor, CBS News Pittsburgh, supra note 31.

19

**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

74.    California medical providers were encountering the same mechanism. In July 2026, the Burn Medical Director at Community Regional Medical Center in Fresno stated that the center had treated patients with squishy-toy injuries; identified both microwave heating and hot-car storage as recurring scenarios; and explained that the hot interior material can rupture and stick to skin. The report did not identify every treated toy by brand, but it corroborated the same filled-toy thermal and adhesion hazard alleged here.[49]

75.    The need for burn specialists, emergency departments, and news outlets to issue reactive public warnings underscores the inadequacy of product warnings that consumers received before the incidents. Schylling possessed product-specific information and controlled the packaging, design, and post-sale communications through which a timely and effective warning could be given.

76.    Long before Plaintiff bought her Nice Cube in on April 30, 2026, Schylling possessed information from consumer complaints, CPSC reports, its own investigation and testing, public advocacy, media inquiries, and communications with regulators sufficient to know of the heat, rupture, burn, adhesion, and irritation hazards alleged here.

### D. Schylling's Warnings Were Absent, Incomplete, or Inadequate

77.    The available record shows an absent, incomplete, and reactive warning program. The family of the child burned in November 2024 reported that his NeeDoh carried no warning. Inside Edition reported on January 14, 2025, that Schylling had only added a website warning the preceding week. In March 2025, Schylling said it had added a warning to packaging and its website.[50,51]

78.    An earlier warning attributed to NeeDoh packaging states: "CAUTION: Do not leave in car or direct sun. Contents may become hot." The

---

[49] See Franco, KMPH FOX26, supra note 13.
[50] See Harksen, WBRC, supra note 5.
[51] See Inside Edition, Girl Burned After NeeDoh Toy Explodes, supra note 7.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

later-added warning, now repeated on many Schylling product pages, states: "Do NOT heat, freeze, or microwave, may cause personal injury."

79.    Neither adequately warns that heat may cause the inner filling to get dangerously hot, rupture, burst, or explode and cause severe burns Neither identifies the means by which injury occurs: hot sticky filling exploding onto the consumer.

80.    The earlier warning identifies a car and direct sun, but its statement that contents may become "hot" minimizes rather than explains the resulting danger. Consumers routinely encounter objects that become warm in sunlight without becoming pressurized, rupturing, spraying adhesive filling, and causing serious burns. The omitted consequences are what make the condition dangerous.

81.    The later warning is deficient in a different and additional way. It omits cars, direct sun, indoor windows, and accumulated ambient heat altogether, even though Schylling markets NeeDoh for use in *cars, on the go* and "*anywhere at any time*." Its phrase "may cause personal injury" also fails to identify the type, severity, or mechanism of injury, including rupture or explosion, immediate thermal burns, continued heat transfer from adhering filling, skin irritation, blistering, scarring, or injury to the eyes and face.

82.    Even as to the conduct it expressly mentions, the warning is incomplete. Telling a child or parent only that microwaving "may cause personal injury" does not disclose that a sealed toy may explode after brief heating and eject sticky material that remains on skin and can cause immediate or deep burns. Nor does it warn consumers not to squeeze, puncture, or handle a warmed product while it cools.

83.    The inadequacy is demonstrated by the injuries themselves. The November 2024 victim suffered full-thickness burns and lasting scars; the January 2025 victim suffered facial burns; and the June 2026 hot-car victim suffered third-degree burns. A warning that says only "may cause personal injury" or that contents "may become hot" omits the critical consequences that make the danger

**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

comprehensible: rupture or explosion, hot adhesive filling, immediate severe burns, scarring, infection and permanent disfiguration.

84.     The warnings also fail to provide adequate storage instructions. The earlier warning identifies cars and direct sun but does not explain that those conditions may lead to rupture, explosion, ejection, or burns. The later warning does not identify cars or sunlight at all. Neither identifies a maximum safe temperature; explains that indoor window exposure can be dangerous; instructs consumers that the product may not feel hot despite containing dangerously hot filler; or explains how long to wait to play with the toy after heat exposure.

85.     Nor do the warnings provide first-aid instructions suited to a sticky heated filling. They do not tell consumers how to remove adhering material without pulling skin, how long to cool the affected area, when to contact Poison Control, or when to seek emergency care.

86.     The only heat-related warning appears in small print on the back of the packaging, while the front facing panel promotes NeeDoh Products as as safe, soothing, toy.  Any warning placed only on the back of a disposable outer packaging is also inadequate for a durable toy likely to remain in use after the packaging is discarded.

87.     Schylling could have used clear language at little cost. Its failure to communicate comparable information rendered the warnings inadequate.

88.     Schylling's selective warnings demonstrate that when its financial interests were threatened, it knew how and was willing to communicate forcefully, specifically, and conspicuously. Schylling issued a prominent OFFICIAL STATEMENT and FRAUD ALERT, identified specific sellers and platforms,

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

directed consumer authorized channels, and ironically, associated its official products with "safety". [52]

89. But when an equally conspicuous and specific warning about genuine NeeDoh products potential to rupture, explode, and severe burn hazards could discourage purchases and hurt its bottom line, Schylling made no comparable official statement or alert. Despite numerous injuries and reports, including children being hospitalized and put into a coma.

90. The disparity supports an inference that Schylling's omissions were not caused by an inability to communicate the danger. Rather, Schylling warned consumers specifically when doing so protected sales while withholding comparable specificity when it might discourage sales.

91. Had Plaintiff received a conspicuous and specific warning identifying rupture, explosion, sticky hot filling, burns, indoor sunlight, and the need to cool before handling, she would not have purchased the product.

**E. Schylling Conceals and Minimizes the Explosion and Burn Hazard**

92. Nowhere in Schylling's public warnings or statements—including its product labels and e-commerce warnings, website and FAQ, social-media communications, or responses to news reports—does Schylling disclose, much less warn, that a NeeDoh product may explode or violently rupture and expel filler hot enough to cause severe burns.

93. This omission persists even when Schylling responds directly to reports expressly describing NeeDoh products exploding, ejecting hot and adhesive contents, and causing severe burns, scarring, hospitalization, and, in one instance, a medically induced coma. In those responses, Schylling characterizes the incidents

---

[52] See Instagram Post, @needohofficial, April 3, 2026, https://www.instagram.com/p/DWr8PSVAPb2/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA== (last accessed July 17, 2026).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

merely as product "misuse" that is "dangerous" and "may cause injury," without identifying the actual mechanism or severity of the hazard.[53]

94.    Schylling's warning concerning foreseeable environmental heat is similarly incomplete. The warning states only: "Do NOT leave in a hot car or direct sun: contents may become hot." It does not warn that the contents may reach temperatures capable of causing severe burns; that the exterior may not reliably reveal the filler's internal temperature; that heating may cause pressure to build within the sealed shell; that the product may rupture or explode when subsequently handled or squeezed; or that the expelled viscous filler may adhere to the skin and prolong the resulting thermal injury. Thus, although Schylling acknowledges that ordinary environmental conditions may heat the contents of the toy designed for 3-year-olds, it omits any warning that those conditions may result in explosive rupture or burn injury.

95.    Schylling's separate warning concerning microwave use likewise states only: "Do NOT heat, freeze or microwave; may cause personal injury." That generalized reference to unspecified "personal injury" does not tell consumers that the enclosed filler may rapidly overheat and build pressure; that the product may explode after it has been removed from the microwave or when it is squeezed; or that the explosion may propel scalding, adhesive material onto a child. Nor does it disclose that the resulting burns may require emergency treatment, hospitalization, or treatment for permanent scarring. Medical experts have explained that the heated gel may build pressure until the product explodes and that its thickness causes it to adhere to skin, potentially producing deeper burns than ordinary hot liquid.[54] [55]

---

[53] See Charna Flam, *Girl, 7, Ends Up in Coma with Severe Burns After Microwaving Popular Squishy Toy*, People (Mar. 20, 2025), https://people.com/girl-7-coma-with-severe-burns-after-microwaving-popular-squishy-toy-needoh-11699893

[54] See https://www.loyolamedicine.org/stories/nine-year-old-burns-himself-after-learning-tiktok-trend-involving-popular-sensory-toy (last accessed July 16, 2026).

[55] See https://www.parents.com/what-is-the-needoh-microwave-trend-11910993 (last accessed July 16, 2026).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

96.    Likewise, Schylling's FAQ intentionally minimizes the danger. Its only discussion of escaped filler treats the event as an ordinary cleanup problem and instructs consumers merely to pick up or clean the material. The FAQ does not warn that escaped filler may be dangerously hot, that it may adhere to skin and cause burns, or that consumers should avoid contact, immediately cool or irrigate an exposed area, protect the eyes and airway, or seek emergency medical treatment. The FAQ describes the filler 'escaping', but does not disclose that filler may 'escape' because the product has explosively ruptured from internal heat and pressure. By describing escaped filler only as something to be cleaned up, Schylling's FAQ affirmatively conveys that leakage is a housekeeping concern rather than a potentially serious safety emergency. [56]

97.    Schylling's repeated selection of vague terms such as "hot" and "personal injury," while omitting explosion, scorching filler, adhesion to skin, severe burns, and the potential need for emergency treatment, is particularly significant because Schylling had received numerous reports describing those exact consequences. Schylling's continued omission of the known mechanism and severity of the hazard—across its labels, website, FAQ, e-commerce warnings, social-media communications, and responses to the press—demonstrates that its failure to provide a complete warning was knowing and deliberate.

### F. Plaintiff's Purchase and Injury

98.    On or about April 30, 2026, Plaintiff purchased a NeeDoh Nice Cube from the Walmart located at 4055 Evergreen Village Sq. Ste 140, San Jose, California 95135. She reasonably expected a product sold for squeezing and sensory use to remain safely contained during foreseeable storage and use. The product was new and was acquired for personal, family, or household sensory and stress-relief use.

---

[56] See Schylling FAQ, https://schylling.com/faqs/ (last accessed July 16, 2026).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

99.    Before purchase, Plaintiff saw the NeeDoh name, the product, and packaging or point-of-sale presentation that portrayed it as a squeezable sensory or fidget toy. Schylling intended consumers to understand that the product was suitable for the ordinary squeezing, carrying, and storage associated with such a toy.

100.    Had Schylling conspicuously disclosed on the product or its point-of-sale packaging that foreseeable indoor sunlight or accumulated ambient heat could cause the Nice Cube to rupture or explode and eject sticky filling capable of causing burns or skin irritation, Plaintiff would have seen and heeded that disclosure and would not have purchased the product, or would have paid less. The omitted hazard was material to a reasonable consumer and was not reasonably discoverable at the point of sale.

101.    No warning presented to Plaintiff adequately disclosed that indoor sunlight or accumulated ambient heat could cause the Nice Cube to rupture or explode and release dangerously hot, adhesive, or irritating filling. Plaintiff did not understand a generic statement about heat or injury to communicate that specific risk.

102.    Plaintiff used and stored the product in a reasonably foreseeable manner. She did not puncture, cut, microwave, freeze, bake, or intentionally heat the Nice Cube. Approximately two weeks after purchase, on or about May 15, 2026, it was indoors on a shelf of her TV stand, near a window, a commonplace location for a small toy or desk object.

103.    The NeeDoh did not feel hot, but when she squeezed it ruptured or exploded and released its filling onto Plaintiff's leg. The filling burned her and caused blisters, painful redness, and skin irritation. Plaintiff also lost the purchase price and use of the product.

104.    The incident was substantially similar to earlier reported failure modes: a sealed NeeDoh Product ruptured and expelled hot filling that contacted

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

and burned the consumer's skin. Plaintiff's incident further confirmed that a microwave is not necessary for the hazard to materialize.

105.   The Nice Cube reached Plaintiff without substantial change in the condition in which Schylling placed it into the stream of commerce. Plaintiff did not alter its design, filling, outer skin, seam, or warnings.

106.   A clear warning about rupture and serious burns would have changed Plaintiff's conduct. A generic statement that contents might become hot did not allow her to appreciate the explosive failure, the adhesive nature of the filling, the potential severity of contact, or that an indoor window could present the triggering condition.

107.   As a direct and proximate result of the defects and omissions, Plaintiff suffered physical pain, a thermal burn and skin injury, redness, irritation, emotional distress associated with the unexpected incident, cleanup, and economic loss, in amounts to be proven.

## G. Materiality and Economic Injury

108.   The undisclosed hazard is material to a reasonable consumer. A parent, teacher, caregiver, or consumer buying a sensory toy for a child would consider it important that the toy can rupture or explode after foreseeable heat exposure and release sticky hot filling capable of causing burns.

109.   Consumers pay for a safe, durable, reusable sensory product—not a sealed container that requires temperature-controlled handling or constant supervision to prevent explosion. A product containing an undisclosed defect is worth less than a product that performs safely as reasonably expected.

110.   Had Defendant disclosed the true risk and provided an adequate warning, Plaintiff and reasonable Class members would not have purchased the NeeDoh Products, would have paid materially less, or would have selected a safer alternative.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

27
CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

111.    Defendant's omission allowed it to charge and retain the full market price while shifting the risk and cost of rupture and explosion, burns, irritation, cleanup, and disposal to consumers. Defendant thereby obtained money it would not have received had the truth been disclosed.

112.    Schylling had exclusive and superior knowledge of product specifications, filling formulations, skin and seam tolerances, thermal and cycle testing, complaint data, retailer communications, CPSC reports, and the chronology and rationale for its warning changes. Consumers could not reasonably discover that information before purchase.

113.    Defendant continues to sell NeeDoh Products. Plaintiff would consider purchasing a NeeDoh sensory product in the future if it were redesigned to be safe and accompanied by complete, truthful, conspicuous warnings. She is presently unable to rely on Defendant's labeling to determine whether the defect has been corrected or whether a given model is safe, creating a continuing threat of future harm.

## CLASS ACTION ALLEGATIONS

114.    Plaintiff brings the consumer and warranty claims in this Complaint on behalf of herself, a Nationwide Class, the California Class, and brings the strict-liability failure-to-warn and design-defect claims on behalf of herself and the California Injury Subclass, under Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and, as appropriate, Rule 23(c)(4):

Nationwide Class: All persons in the United States who, during the Class Period, purchased for personal, family, or household use a NeeDoh Nice Cube or another NeeDoh product containing a materially similar sealed flexible shell, filling, and heat-related warning or omission.

California Class: All persons who, while residing in California, purchased in California for personal, family, or household use one or

28

more NeeDoh Products during the four years preceding the filing of this Complaint through the date of class certification.

California Injury Subclass: All members of the California Class who, during the two years preceding the filing of this Complaint through the date of class certification, suffered bodily injury when a NeeDoh Product ruptured, burst, exploded, or leaked its contents during intended or reasonably foreseeable use, handling, storage, or temperature exposure.

115. Excluded from the Class and Subclass are Defendant; its parents, subsidiaries, affiliates, officers, directors, and employees; the judicial officers assigned to this action and their immediate families; counsel for the parties; persons who timely request exclusion; and persons whose claims have been finally adjudicated.

116. The California Class claims seek economic and injunctive relief arising from the undisclosed defect and do not seek personal-injury damages. The California Injury Subclass asserts strict-liability claims arising from the common rupture-and-exposure hazard. Plaintiff seeks certification of common liability issues for that Subclass, with person-specific medical causation, comparative-fault defenses, and compensatory damages determined in individual proceedings if necessary. Plaintiff also asserts all of her personal-injury claims individually.

117. Numerosity. The Class is so numerous that joinder is impracticable. Schylling has reported selling more than 100 million NeeDoh units, and the products are sold through major national and California retail channels. On information and belief, the California Class includes many thousands of purchasers.

118. The exact number of California Injury Subclass members is presently unknown because incident complaints, returns, retailer reports, insurance claims, CPSC communications, and post-sale contacts are controlled by Schylling and third parties. Public reports describe repeated burns and irritation, multiple intended-use and hot-car ruptures, and California burn-center treatment of the same filled-

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

29

squishy-toy injury mechanism. On information and belief, the Subclass is sufficiently numerous and geographically dispersed that joinder is impracticable.

119. Ascertainability. California Class membership can be determined through Defendant's sales and distribution records, retailer and e-commerce records, receipts, loyalty records, declarations, and other objective proof of a California NeeDoh purchase. Injury Subclass membership can additionally be determined from incident reports, photographs, medical records, claims, communications, and declarations showing rupture or leakage and resulting bodily injury. Both definitions use objective criteria.

120. Commonality and Predominance. Common questions of law and fact include:

a. Whether the NeeDoh Products share a common propensity to rupture or release their filling under foreseeable use or heat;

b. Whether Defendant knew or should have known of the heat, rupture, explosion, burn, adhesion, and irritation hazards before Class members' purchases;

c. Whether Defendant's packaging, warnings, product pages, and marketing omitted or inadequately disclosed those hazards;

d. Whether the omitted information would be material to a reasonable California consumer;

e. Whether Defendant's statements that the products are child-oriented sensory toys for schools, cars, homes, special-needs users, and use anywhere or anytime were misleading without disclosure of the hazard;

f. Whether Defendant violated the CLRA, FAL, UCL, implied warranties, and duties against fraudulent concealment;

g. Whether the NeeDoh Products were worth less than consumers paid because of the latent defect and inadequate warning; and

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

h. The proper measure of restitution, damages, fees, and injunctive relief.

121. The California Injury Subclass presents the following additional common questions:

a. Whether the NeeDoh Products' shared construction and propensity to rupture or explode rendered them defective under California's consumer-expectations or risk-benefit tests;

b. Whether warnings that contents may become hot or that heating may cause unspecified personal injury adequately disclosed rupture, explosion, sticky filling, thermal burns, irritation, indoor sunlight, hot-car exposure, and foreseeable microwave misuse;

c. Whether the heat, pressure, outer shell, seam, and filling risks were known or knowable when the products were distributed; and

d. Whether Schylling's product-line design, testing, warning, and post-sale-warning decisions were common conduct capable of resolution with common proof.

122. The common defect and omission can be proved with common evidence, including product specifications, testing, incident data, complaints, CPSC communications, warning versions, marketing materials, sales data, expert testing, and Schylling's uniform decision-making. Although the wording of Schylling's warnings changed, every challenged version omitted the same essential facts: that foreseeable heat can cause a NeeDoh Product to rupture or explode, eject sticky filling, and burn the user. Classwide exposure, materiality, causation, and the adequacy of those warnings therefore can be decided through common proof rather than individualized purchasing inquiries.

123. For the California Injury Subclass, the existence of a common defect, the adequacy of Schylling's warnings, Schylling's knowledge, the feasibility of safer warnings and designs, and the products' capacity to cause the alleged rupture-and-adhesion injury mechanism can be decided using the same product-line

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

31

evidence. Those issues predominate within the proposed issue class and will materially advance each Subclass member's claim even if individual injury and damages proceedings remain.

124. Substantial Similarity. The named NeeDoh Products are substantially similar for standing and class purposes because each is a filled NeeDoh squeeze product sold for the same sensory purpose; each uses a flexible outer shell around viscous contents; each was sold without a warning that disclosed the alleged rupture, ejection, and burn mechanism; and each presents the same alleged rupture-and-exposure hazard. Product-specific differences can be addressed through subclasses or issue certification if necessary.

125. Typicality. Plaintiff's economic and statutory claims are typical of the California Class because she purchased a Product in California after exposure to the same material omission, paid more than the product was worth, and seeks the same economic and injunctive relief as other Class members.

126. Plaintiff's strict-liability claims are typical of the California Injury Subclass because she purchased a NeeDoh Product, the sealed product ruptured or exploded during foreseeable indoor storage, its filling contacted her skin, and she suffered a burn and irritation caused by the same warnings and product-line hazards challenged on behalf of the Subclass.

127. Adequacy. Plaintiff will fairly and adequately protect the Class's and Subclass's interests. She has no conflict with absent purchasers or injured purchasers, understands the obligation to represent them, and has retained counsel experienced in consumer-protection, product-liability, and class-action litigation.

128. Superiority. A class action is superior for the California Class because individual losses from purchasing a low-cost toy are too small to justify separate litigation, while the common proof and relief make aggregate adjudication efficient. Class treatment avoids inconsistent rulings and permits consumers to obtain relief that would otherwise be practically unavailable.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

129.    Issue treatment is superior for the California Injury Subclass because repeating product design, thermal testing, warning history, notice, and feasible-alternative evidence in separate bodily-injury suits would be wasteful and risk inconsistent rulings. A single determination of those common strict-liability issues can be followed by individual proceedings concerning the nature, cause, and amount of each person's injury.

130.    Rule 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to the Class by using common warnings and omissions and continuing to market the NeeDoh Products. Final injunctive and declaratory relief is therefore appropriate respecting the Class as a whole.

131.    Manageability. The case is manageable through common records and evidence. The Court may certify the Class and Injury Subclass as defined; certify design-defect, failure-to-warn, knowledge, general-causation, or other common issues under Rule 23(c)(4); create product, filling, heat-source, warning-version, or time-period subclasses; or modify the definitions as discovery warrants.

132.    The Nationwide Class seeks relief on the Third Cause of Action for fraudulent concealment and omission. Schylling's challenged conduct emanated from uniform, centralized decisions regarding the design, testing, labeling, warnings, marketing, and continued sale of NeeDoh Products nationwide.

    i.    Common questions for the Nationwide Class include:

        1.    whether Schylling knew of the heat, rupture, explosion, adhesion, burn, and irritation hazards;

        2.    whether Schylling uniformly omitted or inadequately disclosed those hazards in product packaging, point-of-sale materials, product pages, and other consumer-facing communications;

        3.    whether the omitted information was material to a reasonable consumer;

        4.    whether Schylling had a duty to disclose the omitted information;

33

5. whether Schylling intended consumers to purchase NeeDoh Products without disclosure of the omitted hazard; and

6. the appropriate measure of economic damages, restitution, punitive damages, and other relief.

ii. The Nationwide Class is sufficiently numerous because Schylling has reported selling more than 100 million NeeDoh units through nationwide retail and e-commerce channels, making joinder impracticable.

iii. Plaintiff's fraudulent-concealment claim is typical of the Nationwide Class because she purchased a NeeDoh Product after exposure to the same materially incomplete product presentation and suffered the same economic injury alleged by Nationwide Class members: payment for a product worth less than represented because of an undisclosed safety hazard.

iv. Plaintiff will fairly and adequately protect the interests of the Nationwide Class. Her interests are aligned with those of Nationwide Class members seeking redress for Schylling's uniform omissions, and she has retained counsel experienced in consumer-protection and class-action litigation.

v. Common issues predominate because Schylling's knowledge, warning decisions, omissions, materiality, and product-line conduct can be established through common evidence, including product specifications, testing, incident reports, internal communications, warning versions, marketing materials, and sales records.

vi. A class action is superior because individual purchasers' economic losses are too small to justify separate actions, while a single proceeding will efficiently resolve the common issues arising from Schylling's nationwide conduct.

**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

34

vii.   To the extent material differences in applicable state law are identified, Plaintiff requests certification of appropriate state-specific subclasses, appointment of additional class representatives if necessary, or other case-management measures authorized by Rule 23.

## FIRST CAUSE OF ACTION

### (Strict Products Liability—Failure to Warn)

### (Plaintiff Individually and on Behalf of the California Injury Subclass)

133.   Plaintiff incorporates every preceding allegation as though fully set forth here.

134.   Schylling designed, manufactured or caused to be manufactured, imported, distributed, labeled, and sold the NeeDoh Products, including Plaintiff's Nice Cube, and placed them into the stream of commerce. The products reached Plaintiff and Injury Subclass members without substantial change relevant to the alleged warning defect.

135.   The Nice Cube presented risks of rupture, explosion, thermal burn, prolonged skin contact from adhesive filling, and irritation during intended or reasonably foreseeable storage, use, and handling. These risks were known or knowable in light of generally accepted scientific, engineering, and safety knowledge and were actually known to Schylling through testing, complaints, incident reports, and regulatory contacts.

136.   Ordinary consumers would not recognize the nature and magnitude of the risk. A warning that contents may become hot or that heating may cause undefined injury did not disclose that indoor or ambient heat could pressurize or weaken the toy, cause it to rupture or explode, and expel sticky material capable of causing burns or irritation.

137.   A specific, conspicuous, durable warning was feasible and would have reduced or avoided the foreseeable risk. Across warning versions, the failure to disclose rupture or explosion, ejection of sticky hot filling, serious burns, indoor

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

35

sunlight, hot-car exposure, and cooling and first-aid precautions rendered the NeeDoh Products defective and unreasonably dangerous.

138. Plaintiff was a foreseeable user and handled and stored the product in a reasonably foreseeable manner. Had she received an adequate warning, she would not have purchased the product or would have kept it away from the window and heat and allowed it to cool before handling.

139. The warning defect was a substantial factor and direct and proximate cause of the rupture and Plaintiff's burn, redness, bruising or discoloration, irritation, pain, emotional distress, economic loss, and other damages to be proven at trial.

140. California Injury Subclass members likewise suffered bodily injury after a NeeDoh Product ruptured, burst, exploded, or leaked during intended or reasonably foreseeable use, storage, handling, or temperature exposure. These strict-liability claims do not depend on purchasing reliance. Plaintiff seeks common determinations concerning defect, warning adequacy, knowability, and Schylling's product-line conduct, with claimant-specific exposure, warning causation, medical causation, defenses, and damages determined separately to the extent required.

141. Plaintiff and California Injury Subclass members are entitled to compensatory damages and all other relief available under California law.

## SECOND CAUSE OF ACTION

### (Strict Products Liability—Design Defect)

### (Plaintiff Individually and on Behalf of the California Injury Subclass)

142. Plaintiff incorporates every preceding allegation as though fully set forth here.

143. The Nice Cube failed to perform as safely as an ordinary consumer would expect when used or stored in an intended or reasonably foreseeable manner. An ordinary consumer expects a squeezable sensory toy kept indoors near a window not to rupture or explode and release hot, adhesive, or irritating filling.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

144. The same consumer expectation applies to the NeeDoh Products purchased by California Injury Subclass members: a child-oriented squeeze toy should remain contained during reasonably foreseeable squeezing, carrying, storage, ambient heat, and temperature exposure, and should not rupture or eject material capable of adhering to skin and causing burns or irritation.

145. The NeeDoh Products were also defective under the risk-benefit test. The gravity and probability of burns, eye or face injury, irritation, scarring, and injury to children outweighed the utility of using a heat-sensitive, adhesive filling and enclosure unable to tolerate foreseeable heat and mechanical stress.

146. Feasible safer alternatives included a heat-stable and nonirritating filling, a nonadhesive filling, a stronger or differently constructed outer shell and seam, a design that safely accommodates foreseeable expansion and pressure, or a combination of these measures.

147. The alleged common design defects existed when the products left Schylling's possession. Plaintiff used or stored her Nice Cube in a reasonably foreseeable way, and it had not been substantially modified. California Injury Subclass members' products likewise failed during intended or reasonably foreseeable use, storage, handling, or temperature exposure.

148. The design defect was a substantial factor and direct and proximate cause of the rupture and Plaintiff's physical, emotional, property, and economic injuries.

149. Plaintiff seeks common determinations for the California Injury Subclass concerning the shared design architecture, defect, consumer expectations, risk-benefit factors, feasible safer alternatives, and general capacity to cause the alleged injury mechanism. Individual exposure, specific causation, defenses, and damages may be determined separately.

150. Plaintiff and California Injury Subclass members are entitled to compensatory damages and all other relief available under California law.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

**THIRD CAUSE OF ACTION**

**(Fraudulent Concealment and Omission)**

**(Plaintiff and the California Class and Nationwide Class)**

151.    Plaintiff incorporates every preceding allegation as though fully set forth here.

152.    Throughout the Class Period, Schylling marketed and sold NeeDoh Products, including Plaintiff's Nice Cube purchased in April 2026, through product packaging, labels, point-of-sale materials, its website, e-commerce listings, and retailer channels that presented the products as child-oriented sensory toys, safe for children ages 3 and up, while omitting the known rupture, heat, burn, adhesion, and irritation hazards. Schylling personnel with authority to establish nationwide product-safety, labeling, and warning policy received or reviewed the reported burn and rupture incidents and authorized or ratified Schylling's continued sales and incomplete warning response. Those personnel exercised substantial discretionary authority over corporate policy and were officers, directors, or managing agents within the meaning of Civil Code § 3294(b).

153.    Schylling had a duty to disclose because it possessed exclusive and superior knowledge of a latent safety defect; made partial representations about the products' durability and safety that were misleading without the omitted facts; marketed the toy for such use, actively concealed or minimized the specific consequence of heat exposure; and was required to correct prior statements when it learned the truth.

154.    Schylling knew the omitted facts were material. Its addition of product-line warnings, communications with the CPSC, public statements about injury, and efforts to remove misuse content demonstrate that it understood the information would affect consumer conduct and purchasing decisions.

155.    Schylling intended that Plaintiff and Class members rely on the incomplete presentation and purchase the NeeDoh Products without demanding a

38

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

lower price, selecting alternatives, or declining the transaction. The omission protected sales of a toy whose appeal depends on appearing soothing, safe, portable, and suitable for children.

156. The omitted hazard was material to a reasonable consumer and was not reasonably discoverable. Because Schylling omitted the same essential rupture, explosion, and burn hazard from each challenged point-of-sale presentation, causation and reliance are susceptible to common proof and an inference of reliance arises from objective materiality, rather than from each Class member's subjective purchasing motivations.

157. Had the truth been disclosed, Plaintiff would not have bought the product or would have paid less. The Class suffered economic damage measurable through common evidence of the purchase price, a price premium, or the difference between the value represented and value received. Plaintiff also suffered individual physical and consequential damages.

158. Schylling acted intentionally, fraudulently, and with conscious disregard for consumer safety after receiving reports of burns and ruptures. Plaintiff therefore seeks compensatory and punitive damages, restitution where available, and other relief permitted by law.

## FOURTH CAUSE OF ACTION

### (Breach of the Implied Warranty of Merchantability)

### (Plaintiff and the California Class)

159. Plaintiff incorporates every preceding allegation as though fully set forth here.

160. The NeeDoh Products are new products purchased or used primarily for personal, family, or household purposes and therefore constitute "consumer goods" within the meaning of Civil Code § 1791(a). Under Civil Code §§ 1791.1 and 1792, each retail sale of a NeeDoh Product in California was accompanied by

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Schylling's implied warranty that the product was merchantable, including that it was fit for its ordinary purposes and adequately contained, packaged, and labeled.

161.    Schylling manufactured and distributed the NeeDoh Products and is a "manufacturer" within the meaning of Civil Code § 1791(j). The implied warranty imposed by Civil Code §§ 1791.1 and 1792 accompanied each covered retail sale in California.

162.    The NeeDoh Products were not fit for their ordinary purpose as safe, reusable squeeze and sensory toys because they could rupture under foreseeable heat conditions and expose consumers to sticky hot or irritating filling without an adequate warning. They also failed to conform to the promises and affirmations on their labeling and marketing.

163.    The latent defect existed when the products left Schylling's possession and at the time of retail sale. The defect rendered the products unfit for their ordinary purpose as reusable squeeze and sensory toys.

164.    As a direct and proximate result, Plaintiff and Class members paid for products that were worth less than represented and suffered damages recoverable under Civil Code § 1794. Plaintiff also seeks the costs and expenses, including reasonable attorneys' fees, recoverable under Civil Code § 1794(d).

## FIFTH CAUSE OF ACTION

**(Violation of the California Consumer Legal Remedies Act, Civil Code § 1750 et seq.)**

**(California Class)**

165.    Plaintiff incorporates the preceding factual and class allegations as though fully set forth herein, except that Plaintiff does not incorporate into this cause of action any request for damages, restitution, punitive damages, or other monetary relief.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

166.    Plaintiff and Class members are consumers who purchased goods for personal, family, or household purposes. Their purchases were transactions within Civil Code § 1761.

167.    Schylling violated Civil Code § 1770(a)(5) and (7) by representing, through statements, half-truths, and material omissions, that the NeeDoh Products had characteristics, uses, benefits, quality, or safety they did not have and were of a standard or quality different from the truth.

168.    Specifically, Schylling presented the products as safe, portable sensory toys for children, schools, homes, cars, special-needs users, and ordinary repeated squeezing, while failing to disclose that foreseeable heat or use could cause rupture or explosion and release sticky hot or irritating filling capable of causing burns and serious injury.

169.    The omitted facts were material, and Schylling had a duty to disclose them. Plaintiff would have seen and heeded a conspicuous point-of-sale disclosure and would not have purchased the Nice Cube or would have paid less. As to the Class, causation and reliance arise from common proof of the uniform material omission, not individualized purchasing motivations.

170.    Plaintiff has not yet completed the notice process required by Civil Code § 1782(a). Accordingly, Plaintiff presently seeks under the CLRA only injunctive relief under Civil Code § 1782(d), together with reasonable attorneys' fees and costs under Civil Code § 1780(e). Plaintiff does not presently seek damages, restitution, punitive damages, or any other monetary relief under the CLRA. After proper service of notice and expiration of the applicable statutory period, Plaintiff reserves the right to amend as authorized by § 1782(d).

171.    The violations caused Plaintiff and Class members to suffer actual economic injury. Schylling's conduct was knowing, willful, fraudulent, and undertaken despite specific notice of consumer injuries.

172.  Plaintiff presently seeks under the CLRA only an order enjoining the unlawful practices and reasonable attorneys' fees and costs under Civil Code § 1780(e). Plaintiff does not seek damages, restitution, punitive damages, or other monetary relief under the CLRA in this Complaint.

## SIXTH CAUSE OF ACTION

**(Violation of the California False Advertising Law, Business and Professions Code § 17500 et seq.)**

**(California Class)**

173.  Plaintiff incorporates every preceding allegation as though fully set forth here.

174.  Schylling disseminated or caused to be disseminated advertising in California that described NeeDoh Products as child-oriented sensory toys for squeezing, schools, special-needs users, cars, homes, and for use anywhere or anytime.

175.  Those representations were untrue or misleading because they omitted the known, material fact that foreseeable heat, storage, handling, or use could cause the products to rupture or explode and release sticky hot or irritating filling capable of causing burns and serious injury.

176.  Schylling knew or should have known the advertising was misleading in light of its product knowledge, complaints, CPSC reports, hot-car incidents, public responses, and warning changes.

177.  Plaintiff actually relied on the packaging and sensory-toy presentation in purchasing her Nice Cube, and the omitted hazard was material. Plaintiff lost money or property because she would not have purchased the product or would have paid less for a truthfully advertised product. The same objective, material omission appeared across the challenged product-line presentations, making deception and causation susceptible to common proof for the Class.

**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

178.    Plaintiff seeks restitution, injunctive relief, and all other relief authorized by Business and Professions Code § 17535.

## SEVENTH CAUSE OF ACTION

### (Violation of the California Unfair Competition Law, Business and Professions Code § 17200 et seq.)

### (California Class)

179.    Plaintiff incorporates every preceding allegation as though fully set forth here.

180.    By committing the acts and practices alleged herein, Schylling has engaged in unlawful, fraudulent, and unfair business practices in violation of Cal. Bus. & Prof. Code §17200 *et seq*. ("the UCL").

181.    **Unlawful Conduct**: As a result of engaging in the conduct alleged in this Complaint, Schylling has violated the UCL's proscription against engaging in unlawful conduct by virtue of: (i) fraudulent and deceitful conduct in violation of California Civil Code §§1709 through 1711; (ii) violations of the Consumers Legal Remedies Act, California Civil Code §§1770(a)(5) and (a)(7); (iii) breach of implied warranty of merchantability and (iv) engagement in false advertising and marketing in violation of California Business and Professions Code §17500 *et seq*. The practices were unlawful because they violated, among other law, the CLRA, FAL, California warranty law, and California duties against fraudulent concealment and the sale of defective products.

182.    **Fraudulent Conduct**: Schylling has violated the UCL's proscription against fraud as a result of engaging in the fraudulent and deceitful conduct alleged herein throughout this Complaint. The practices were fraudulent because they were likely to deceive reasonable consumers into believing the NeeDoh Products were safe for the ordinary sensory uses and locations Schylling promoted, when foreseeable heat or use could cause it to rupture or explode and cause burns and injury.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

43

183. **Unfair Conduct**: Schylling has violated the UCL's proscription against unfair conduct as a result of engaging in the conduct alleged in this Complaint, which violates legislatively-declared policies articulated in, *inter alia*, California Civil Code §§1710, 1711, and 1770(a)(5), (a)(7), and (a)(9).

184. The practices were unfair because the substantial consumer injury— payment for defective products and exposure to unexpected burns and irritation— was not reasonably avoidable, was not outweighed by any countervailing benefit, offended established product-safety and consumer-protection policy, and could readily have been avoided through safer design and adequate disclosure.

185. Plaintiff actually relied on Defendant's misleading product presentation and omission. She lost money or property because she paid more than the Nice Cube was worth or bought a product she otherwise would not have purchased. Classwide causation follows from common proof that the same omitted hazard was material to a reasonable consumer.

186. Schylling acquired Plaintiff's and Class members' money through the challenged practices. Restitution is therefore available to restore the purchase price or price premium wrongfully obtained.

187. Plaintiff also faces a real threat of future harm because Defendant continues selling NeeDoh Products and she cannot determine from current labeling whether the defect has been corrected or which products can be safely purchased. Injunctive relief is necessary to require complete warnings and corrective practices.

188. Plaintiff seeks restitution, declaratory and injunctive relief, attorneys' fees where authorized, and all other relief available under Business and Professions Code § 17203.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed California Class, California Injury Subclass and Nationwide Class requests that the Court:

(1) Certify the proposed California Class and California Injury Subclass under

**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

44

Federal Rule of Civil Procedure 23, including appropriate common strict-liability issues under Rule 23(c)(4), appoint Plaintiff as Class and Subclass representative, and appoint her counsel as Class counsel;

(2) Declare that Defendant's conduct violated the laws alleged in this Complaint;

(3) Award Plaintiff compensatory damages for her personal injuries, pain, emotional distress, property losses as applicable, and economic losses in an amount to be proven;

(4) Award California Injury Subclass members compensatory damages and other relief permitted on the strict-liability claims;

(5) Award Plaintiff, the California Class, and the Nationwide Class restitution, actual damages, and other monetary relief presently available under the non-CLRA claims pleaded in this Complaint;

(6) Award punitive damages on the non-CLRA claims for which punitive damages are presently available;

(7) Enter appropriate injunctive relief requiring Defendant to disclose conspicuously the risks of rupture or explosion and to undertake other corrective measures supported by the evidence;

(8) Award pre- and post-judgment interest;

(9) Award reasonable attorneys' fees, costs, and expenses;

(10)    Grant such other and further relief as the Court deems just and proper.

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

45

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: July 21, 2026                              WILSHIRE LAW FIRM, PLC


                                                  /s/ *Chumahan B. Bowen*
                                                  Thiago M. Coelho
                                                  Chumahan B. Bowen
                                                  Jesenia A. Martinez
                                                  *Attorneys for Plaintiff Cristiana Mendoza*
                                                  *and the Proposed California Class,*
                                                  *California Injury Subclass and National*
                                                  *Class*

WILSHIRE LAW FIRM, PLC
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL